UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
 :
**DOMENIC ROBERTO**, :
 :
                Plaintiff, :
 :
    – against – : **MEMORANDUM DECISION AND ORDER**
 :
**ANDREW SAUL**, : 20-CV-1923 (AMD)
 :
                Defendant. :
 :
--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff challenges the Social Security Commissioner's decision that he was not disabled for the purpose of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. On February 5, 2021, the plaintiff moved for judgment on the pleadings. (ECF No. 12.) On April 1, 2021, the defendant moved to remand for further administrative proceedings. (ECF No. 16.) For the reasons set forth below, I grant the plaintiff's motion in part, grant the defendant's motion in part and remand the case for further proceedings.

## BACKGROUND

On August 12, 2013, the plaintiff, Domenic Roberto, applied for disability insurance alleging disability beginning July 25, 2013 from injuries to his neck, shoulders and back that he sustained as a firefighter. (Tr. 217-18; *See* Tr. 388-89.) The plaintiff listed the following conditions in his application: cervical radiculopathy and right shoulder injury and surgery, C3-4 C4-5 level cervical disc herniations, superior labral flap tear, hypertrophic subacromial bursa and L5/S1 intervertebral disc bulge with central profusion. (Tr. 268.) The Social Security Administration ("SSA") denied his claim on November 22, 2013. (Tr. 124-28.) The plaintiff requested a hearing, which took place on May 4, 2015 and September 22, 2015 before

Administrative Law Judge ("ALJ") Sheila Walters.[1] (Tr. 43-114.) The plaintiff and a vocational expert testified at each hearing. (*Id.*) In a September 25, 2015 decision, ALJ Walters denied the plaintiff disability benefits, concluding that he could still perform some sedentary work and that there were jobs in the national economy that he could perform. (Tr. 18-34.)

The plaintiff appealed this decision to the Appeals Council, attaching a report detailing a March 9, 2016 surgery performed on his left shoulder. (Tr. 14-17.) The Appeals Council denied review, finding, among other things, that the 2016 report did "not affect the decision about whether [the plaintiff was] disabled beginning on or before September 25, 2015." (Tr. 2.) On June 23, 2017, the plaintiff filed an action in this district appealing the Commissioner's "final decision." (Tr. 628-31.) On September 28, 2018, the Honorable Margo K. Brodie issued a Memorandum and Order remanding the case for further administrative proceedings. (Tr. 646-60.) Judge Brodie determined that, in fact, the 2016 report did affect the disability determination because the surgery addressed an injury that existed during the disability period and was relevant to probing the severity and persistence of the plaintiff's shoulder pain. (*Id.*)

On remand, ALJ Dina Loewy held a hearing on August 15, 2019.[2] (Tr. 528-82.) Medical expert Dr. Ronald Kendrick and vocational expert Robert Baker also appeared and testified at the hearing. (*Id.*) On December 31, 2019, the ALJ issued a decision denying the plaintiff benefits. (Tr. 499-518.)

The ALJ concluded that the plaintiff suffered from the following severe impairments: degenerative disc disease, degenerative joint disease of the shoulders, carpal tunnel syndrome,

---

[1] ALJ Walters held two hearings, each by video, because there were technical issues—"audio problems"—during the first one. (Tr. 87.)

[2] On remand, the SSA consolidated the plaintiff's initial 2013 claim with his duplicative 2017 benefits application. (Tr. 663, 923-24.)

2

migraine disorder and obesity. (Tr. 505-06.) She also determined that the plaintiff's severe impairments did not meet or equal the severity of impairments listed in the applicable Social Security regulations. (Tr. 506-07.) The ALJ found that the plaintiff had the residual functional capacity to perform sedentary work with the following limitations:

> [T]he claimant is capable of sitting for six hours of an eight[-]hour workday and standing up to two hours in an eight[-]hour workday, and lifting or carrying up to 10 pounds. After seated for thirty minutes, the claimant can stand and stretch at the workstation for 1-2 minutes. The claimant can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. The claimant can occasionally balance and stoop, but never kneel, crouch, or crawl. The claimant can frequently reach bilaterally but only occasionally reach overhead. He can occasionally push or pull. The claimant can frequently handle or finger. He must avoid all exposure to hazardous machinery, unprotected heights, and operational control of moving machinery.

(Tr. 507.) Finally, the ALJ found that although the plaintiff could not do his past relevant work as a firefighter, he could perform the following jobs which exist in significant numbers in the national economy: Call Out Operator, Telephone Quotation Clerk and Charge Account Clerk. (Tr. 517-18.) On April 27, 2020, the plaintiff filed this action, appealing the ALJ's decision. (ECF No. 1.)

## LEGAL STANDARD

A district court reviewing the Commissioner's final decision is limited to determining "whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)). The district court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Richardson v. Perales*,

3

402 U.S. 389, 401 (1971)). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). When the Commissioner's determination is supported by substantial evidence, "the decision must be upheld, even if there also is substantial evidence for the plaintiff's position." *Cerqueira v. Colvin*, No. 14-CV-1134, 2015 WL 4656626, at *11 (E.D.N.Y. Aug. 5, 2015) (internal quotation marks omitted). A district judge may not "substitute [her] own judgment for that of the [ALJ]," even if she would have made a different decision. *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991).

"Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,'" the Court will not defer to the ALJ's determination "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)) (alteration in original). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).

## DISCUSSION

The plaintiff makes several challenges to the ALJ's decision. He argues that the ALJ did not adhere properly to the treating physician rule, that the ALJ's residual functional capacity ("RFC") determination did not reflect all the plaintiff's limitations and that the ALJ's step five conclusions were not supported by substantial evidence. The plaintiff also urges the Court to

remand solely for the calculation of benefits, arguing that the record shows compelling evidence of actual disability. Finally, the plaintiff requests that if the decision is remanded for further proceedings, the Court order the Commissioner to assign a new ALJ to the case.

The defendant concedes that the ALJ made a legal error in her RFC determination, and thus, that the case should be remanded for further proceedings. The defendant refutes the plaintiff's other challenges.

**I.      Treating Physician Rule**

The plaintiff challenges the ALJ's application of the treating physician rule to the medical opinions of Dr. Kenneth Chapman, Dr. Igor Stiler and Dr. John Reilly.[3] (ECF No. 13 at 17-21.) The treating physician rule requires the ALJ to give a treating physician's opinion "controlling weight" if it is "well-supported by medically acceptable clinical laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2). "[I]f the ALJ decides the opinion is not entitled to controlling weight, [she] must determine how much weight, if any, to give it." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). When the ALJ does not give a treating physician's opinion controlling weight, she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Moreover, "the ALJ must explicitly consider, inter alia, (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); 20 C.F.R. § 404.1527(c)(1)-(6). If the ALJ does not explicitly consider these factors the case must be remanded unless "a

---

[3] The ALJ assigned "partial weight" to the opinion of treating physician Dr. Jo Hannafin and "little weight" to the opinion of treating physician Dr. William Kennedy. (Tr. 514-15.) The plaintiff has not challenged these determinations. (*See* ECF No. 13 at 18-21.)

5

searching review of the record" makes it clear that the ALJ applied "the substance of the treating physician rule." *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

### a. Dr. Kenneth Chapman

Dr. Chapman, a pain management physician, treated the plaintiff for shoulder pain, cervical spine pain and lumbar spine pain in 2011, and again from 2017 to 2019. (Tr. 1244-54.) Dr. Chapman opined that the plaintiff could lift and carry less than five pounds frequently and could lift and carry less than ten pounds occasionally. (Tr. 1242.) Dr. Chapman also opined that the plaintiff could never reach with his left arm in any direction, could handle and finger with his left hand only occasionally, could lift his right arm in any direction occasionally and frequently could use his right hand to handle, finger and feel. (*Id.*) Dr. Chapman also concluded that the plaintiff was limited to standing, walking and sitting for less than two hours in an eight-hour workday. (*Id.*)

The ALJ assigned Dr. Chapman's opinion little weight finding it inconsistent with record evidence, including Dr. Chapman's own treatment notes, in which he wrote that the plaintiff had normal muscle strength and normal motor function. (Tr. 515, 1217.) For example, in his July 2019 treatment notes, Dr. Chapman stated that the claimant showed normal reflexes in his bilateral hands and wrists—i.e., in both hands and wrists. (Tr. 515, 1217.) Moreover, consultative physician and internist Dr. Yousif Jawad's December 2017 examination findings showed normal motor power in the upper and lower extremities, normal sensory system findings and normal reflexes, (Tr. 515, 1102), and Dr. Stiler wrote in his May 2019 treatment notes that the plaintiff had exhibited full motor strength in the right upper and lower extremities, (Tr. 515, 1195-96).

6

The ALJ also found Dr. Chapman's opinion inconsistent with the testimony of medical expert Dr. Kendrick, who testified that the plaintiff exhibited normal strength and motor function and could perform light to sedentary work based on his review of the record. (Tr. 515-16.) Dr. Kendrick reasoned that a person with normal strength who was neurologically intact, as reflected in the treatment notes, would be able to lift more than ten pounds. (Tr. 556-60.)

In assigning Dr. Chapman's opinion less than controlling weight, the ALJ did not explicitly consider all the relevant factors; nor does the record otherwise make clear that Dr. Chapman's opinion is due less than controlling weight. Although the ALJ identified some divergence between Dr. Chapman's opinion and certain medical evidence in the record, she did not explicitly consider the other relevant factors. Dr. Chapman, a pain management specialist who treated the plaintiff for at least two years, based his opinion on, among other evidence, MRI imaging capturing signs of decline—degenerative changes to the plaintiff's spine—and physical examination results showing limitations to movement in the plaintiff's shoulders, lumbosacral spine and cervical spine. (Tr. 1244-54.) Thus, it is not clear that his opinion is due less than controlling weight. Moreover, to the extent the ALJ rested her decision on inconsistency between Dr. Chapman's opinion and his own treatment notes, the ALJ should have sought clarification about the perceived discrepancies. *See McGill v. Saul*, No. 18-CV-6430, 2020 WL 729774, at *4 (E.D.N.Y. Feb. 13, 2020) ("[S]ince the ALJ deemed the treating physicians' opinions lacking in support, the ALJ should have sought clarification from them regarding the deficiencies she perceived in their opinions . . . . The ALJ is not permitted to cherry pick from the treatment record only evidence that is inconsistent with the treating source's opinion in order to conclude that the opinion should be accorded less weight." (citations omitted)).

7

On remand, the ALJ should obtain any clarification necessary and explicitly address all of the treating physician rule factors.

### b. Dr. Igor Stiler

Dr. Stiler, a board-certified neurologist, treated the plaintiff for pain in his neck, back, shoulders and lower extremities from 2017 through 2019. (Tr. 1212-15.) Dr. Stiler opined that the plaintiff could carry more than five pounds but less than ten pounds, never could reach bilaterally in any direction, never could handle, finger or feel with his right hand, but occasionally could handle, finger or feel with his left hand. (Tr. 1210.) Dr. Stiler also opined that the plaintiff was limited to standing and walking for less than one hour in an eight-hour workday, and to sitting for less than two hours in an eight-hour workday. (*Id.*)

The ALJ assigned Dr. Stiler's opinion little weight because she found it inconsistent with record evidence. (Tr. 515.) The ALJ's reasoning mirrored her reasoning about Dr. Chapman's opinion: she emphasized Dr. Stiler's own May 2019 treatment notes stating that the plaintiff exhibited full motor strength in the right upper and lower extremities, as well as Dr. Kendrick's testimony. (Tr. 515, 1195-96.)

In assigning Dr. Stiler's opinion less than controlling weight, the ALJ did not explicitly consider all the relevant factors; nor does the record otherwise make clear that Dr. Stiler's opinion is due less than controlling weight. Dr. Stiler, a board-certified neurologist who treated the plaintiff at least nine times over a two-year period, based his opinion on physical examinations, which revealed tenderness and spasms in the plaintiff's spine. (Tr. 1210-1215.) He also cited MRI results showing degenerative changes to the plaintiff's spine and EMG results indicating cervical radiculopathy. (*Id.*) Thus, it is not clear from the record that Dr. Stiler's opinion is due less than controlling weight. Moreover, to the extent the ALJ based her decision

8

on inconsistencies between Dr. Stiler's notes and his conclusions, she should have sought clarification. *See McGill*, 2020 WL 729774, at *4. On remand, the ALJ should address all of the treating physician rule factors after obtaining any necessary clarifications.

### c. Dr. John Reilly

Dr. Reilly, an orthopedist, treated the plaintiff for neck, back, knee and shoulder pain from 2017 through 2019. (Tr. 1238-41.) Dr. Reilly opined that the plaintiff could lift more than five pounds but less than ten pounds, never could reach overhead or laterally with either arm, occasionally could reach forward with both arms and occasionally could handle, finger and feel with both hands. (Tr. 1236.) Dr. Reilly also opined that the plaintiff was limited to standing and walking for less than two hours and to sitting for less than six hours in an eight-hour workday. (*Id.*) The ALJ assigned Dr. Reilly's opinion little weight because the ALJ found it inconsistent with the record and with Dr. Kendrick's testimony. (Tr. 515.)

In assigning Dr. Reilly's opinion less than controlling weight, the ALJ did not explicitly consider all the relevant factors; nor does the record otherwise make clear that Dr. Reilly's opinion is due less than controlling weight. Dr. Reilly, an orthopedist who treated the plaintiff at least ten times over a two-year period, based his opinion on his examinations of the plaintiff, after he which he determined that the plaintiff had spasms in his neck and back, as well as limited motion in his cervical spine, shoulders and arms. (Tr. 1237-1241.) Dr. Reilly also cited MRI results showing degenerative changes to the cervical spine and lumbar spine and EMG results confirming C6 radiculopathy to the right with evidence of carpal tunnel. (*Id.*) Thus, it is not clear from the record that Dr. Reilly's opinion was due less than controlling weight. On remand, the ALJ should explicitly address all of the treating physician rule factors.

### d. Dr. Ronald Kendrick

While the ALJ accorded only partial or little weight to the treating physicians' opinions, she gave significant weight to the opinion of Dr. Ronald Kendrick, the medical expert who testified at the August 2019 hearing. (Tr. 515-16.) Dr. Kendrick did not examine the plaintiff but reviewed the plaintiff's records. He opined that the plaintiff could perform between light and sedentary work and could lift more than ten pounds. (Tr. 555.) He based his opinion on the treating physicians' treatment notes indicating that the plaintiff had normal muscle strength and motor function. (Tr. 555-57.) The ALJ accorded significant weight to Dr. Kendrick's opinion because it was consistent with treatment notes, the findings of consultative examiners, the plaintiff's September 2013 function report and the plaintiff's testimony about his ability to perform daily tasks. (Tr. 515-16.) She also observed that Dr. Kendrick is an "orthopedic surgeon who is a medical expert familiar with Agency regulations." (Tr. 516.)

While Dr. Kendrick's opinion was informed by the record, he never examined the plaintiff. (Tr. 553.) His conclusion that the plaintiff could lift more than ten pounds was contrary to the conclusions of at least three of the plaintiff's treating doctors. (Tr. 1210, 1236, 1242.) On remand, the ALJ should reexamine her decision to assign Dr. Kendrick's opinion greater weight than the opinions of the physicians who treated the plaintiff. *See Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) (The ALJ's decision to "elevat[e] the opinion of the medical adviser, who never had examined [the plaintiff], over that of . . . her treating physician" was improper.) Reconsideration is especially warranted because, as discussed above, the ALJ did not consider all of the treating physician rule factors in evaluating the opinions of the treating physicians.

**II.     RFC Determination**

The plaintiff challenges the ALJ's RFC determination. He argues that the RFC should have included limits on his ability to finger and handle, especially given the ALJ's adoption of Dr. Kendrick's testimony. (ECF No. 13 at 20.) He also faults the ALJ for failing to consider Dr. Kendrick's opinion about his pain, and how it affected his ability to sit, stand, walk, lift, carry, reach, handle and finger in general. (*Id.* at 21.)

The ALJ concluded that the plaintiff "retained significant use of his hands" and had the residual functional capacity frequently to finger and handle bilaterally. (Tr. 507, 514.) In reaching this conclusion, the ALJ cited two sets of treatment notes—Dr. Chapman's and Dr. Stiler's—which stated that the claimant had full bilateral grip strength and normal reflexes in his hands and wrists. (Tr. 514, 1195-96, 1217.) The ALJ also based this determination on Dr. Kendrick's testimony, but seems to have misinterpreted that testimony. Dr. Kendrick testified that the plaintiff "would have restrictions in the use of his right hand to infrequently use." (Tr. 555.) By contrast, the ALJ stated that Dr. Kendrick "testified that the claimant . . . frequently [could] . . . use his right hand." (Tr. 516.) This inconsistency warrants remand. *See Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 433, 436 (S.D.N.Y. 2010) (remanding where ALJ's findings rested in part on misstatement of the claimant's testimony).

Contrary to the plaintiff's assertions, the ALJ did consider evidence of his pain in her RFC determination. She discussed medical treatment notes and examination findings detailing the plaintiff's pain throughout her decision. (Tr. 507-14.) On remand, the ALJ again should consider evidence of the plaintiff's pain as she reevaluates the RFC determination.

**III.     Step Five Analysis**

The plaintiff challenges the ALJ's step five conclusion. He argues that the ALJ did not resolve an apparent conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT") description of two of the three jobs the ALJ determined the plaintiff could do. (ECF No. 13 at 22-25.) Thus, the plaintiff asserts, only one of the ALJ's recommended jobs was available to him; and because this job does not exist in significant numbers in the national economy, the Commissioner did not meet his step five burden. (*Id.*)

   a.  **Apparent Conflict**

The ALJ, citing the VE's testimony, determined that the plaintiff could work as a Call Out Operator, a Telephone Quotation Clerk or a Charge Account Clerk. (Tr. 517). The ALJ also limited the plaintiff to only occasional overhead reaching. (Tr. 507.) These two conclusions are inconsistent.

The DOT[4] describes Telephone Quotation Clerk (DOT Code 237.367-046) and Charge Account Clerk (DOT Code 205.367-014) as jobs involving frequent reaching. SCO, Part A, Titles Arranged by GOEG, SVP, and Strength Level. "Reaching" includes overhead reaching. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019) (holding that "reaching" in the SCO includes overhead reaching, including because of a "Social Security Program Policy Statement defin[ing] 'reaching' as 'extending the hands and arms in any direction[.]'" (citing SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985))); *see also* SCO App'x C, Physical Demands (defining reaching as "extending arms in any direction.").

---

[4] References to the DOT also include the DOT's companion publication, the Selected Characteristics of Occupation.

12

The ALJ has an affirmative duty to identify and resolve any conflict between the VE's testimony and the DOT. *Lockwood*, 914 F.3d at 93. The ALJ must "ask about any possible conflict and . . . elicit a reasonable explanation for any such conflict before relying on the vocational expert's testimony." *Id.* at 91 (alterations, internal citations and quotation marks omitted). "[C]atch-all question[s] to the vocational expert regarding any inconsistencies between the expert's testimony and the DOT do[] not satisfy [this] duty." *Patti v. Colvin*, No. 13-CV-1123, 2015 WL 114046, at *6 (W.D.N.Y. Jan. 8, 2015).

The ALJ did not resolve the conflict between the VE's testimony that the plaintiff could work as Telephone Quotation Clerk or Charge Account Clerk and the DOT's description of each job as involving frequent reaching, and by extension, frequent overhead reaching. The ALJ asked the VE if his testimony was consistent with the DOT, (Tr. 571), but this catch-all question was not enough. The VE answered that "[t]he DOT doesn't discuss overhead reach with a single arm, but you know, I gave you examples of clerical positions. These would not require more than occasional reach." (Tr. 571.) When the ALJ refined the reaching limitation to both arms, the VE testified that "the overhead rarely is an issue in these jobs. These are all clerical-type positions, and so you know, they don't really have to do a lot of work overhead." (Tr. 577-78.) The VE also testified that the DOT doesn't mention overhead reaching. (Tr. 578.) Although the VE stated that his conclusions were "based on [his professional] experience," the ALJ did not identify the conflict explicitly or otherwise address it squarely. (Tr. 578); *Nieto v. Comm'r of Soc. Sec.*, No. 20-CV-3138, 2021 WL 1784317, at *3 (E.D.N.Y. May 5, 2021) (*Lockwood* "held that the procedure that must be used to resolve the conflict is that the ALJ must first expressly recognize the conflict and then elicit a specific basis from the vocational expert that reconciles it."). Thus, the ALJ's step five conclusion was not based on substantial evidence.

### b. Number of Jobs

The plaintiff argues that because Call Out Operator is the only one of the three jobs the VE identified that is consistent with the ALJ's RFC determination, the Commissioner did not meet his burden of showing that a significant number of jobs exist in the national economy that the plaintiff could perform. (ECF No. 13 at 22-24.)

The VE testified that there are 4,573 full-time Call Out Operator jobs available in the national economy. (Tr. 574.) The Second Circuit has not established a bright line rule, but courts in the Circuit have described the number of jobs required to form a "significant number" as "fairly minimal." *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229 (N.D.N.Y. 2015). Nevertheless, courts have been "troubled" when fewer than 10,000 jobs in the national economy were identified, and it was unclear if any were geographically near the plaintiff. *See, e.g.*, *Terri G. v. Comm'r of Soc. Sec.*, No. 18-CV-0066, 2019 WL 1318074, at *11 (N.D.N.Y. Mar. 22, 2019); *Hamilton*, 105 F. Supp. 3d at 229-31 (N.D.N.Y. 2015) (finding that 5,160 was not a "significant number" of jobs); *compare Rodriguez v. Berryhill*, No. 16-CV-1010, 2018 WL 704136, at *5 (D. Conn. Feb. 5, 2018) (finding that 25,000 was a "significant number" of jobs). On remand, and informed by the foregoing, the ALJ should determine if the jobs the plaintiff can perform exist in "significant numbers."

## IV.   Remand

### a. Remand Solely to Calculate Benefits

The plaintiff urges the Court to remand this action solely for the calculation of benefits. (ECF No. 13 at 25-26.) According to the plaintiff, the record makes clear that he is disabled within the meaning of the Social Security Act and the defendant failed to meet his step five burden. (*Id.*)

Reversal and remand solely for the calculation of benefits is appropriate "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *accord Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999). This remedy also is appropriate when the Commissioner has not met the step five burden and there is not substantial evidence to support his finding that the claimant can perform sedentary work. *Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir. 1998). In this case, I remand for further proceedings consistent with this opinion.

The plaintiff emphasizes the opinions of his treating physicians. But the opinions of treating physicians do not establish conclusively that the plaintiff is disabled within the meaning of the Social Security Act. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he Social Security Administration considers the data that the physicians provide but draws its own conclusions as to whether those data indicate disability."). Additionally, even among the opinions of the plaintiff's treating physicians, there is conflicting evidence in the record. For example, Dr. Kenneth Chapman, a pain management physician, opined that the plaintiff could handle and finger with his right hand frequently while Dr. Stiler, a neurologist, opined that the plaintiff never could handle and finger with his right hand. (Tr. 1210, 1242). Where there is conflicting evidence, "it is for the [Social Security Administration], and not th[e] court, to weigh the conflicting evidence in the record." *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). On the other hand, the Court observes that there is at least some evidence in the record that the plaintiff cannot perform even sedentary work. (*See, e.g.*, Tr. 1253 (Dr. Chapman opined that the plaintiff was able to walk for less than two hours a day and sit for less than four hours a day); Tr. 1210 (Dr. Stiler opined that the plaintiff was able to walk for less than one hour in an eight-hour workday and for less than two hours in an eight-hour workday).)

### b. New ALJ

Finally, the plaintiff requests that the Court remand his proceeding to a new ALJ because ALJ Loewy adopted Dr. Kendrick's "outrageous assertion that [the plaintiff] faked his medical findings and is lying about his symptoms." (ECF No. 13 at 25-26.)

Dr. Kendrick questioned the accuracy of an examination conducted by physicians of the New York City Fire Department ("FDNY"). (Tr. 564-65). Based on a June 21, 2013 examination, FDNY physicians concluded that the plaintiff had bilateral hand grip weakness and bilateral wrist extensor weakness. (Tr. 1123-24.) Dr. Kendrick testified that the FDNY exam was not demonstrative of the plaintiff's strength because it was a single test that requires a patient's cooperation and "[p]atients can fake it if they want to." (Tr. 564-65.) ALJ Loewy determined that the plaintiff retained full strength and motor skills, despite the FDNY physicians' findings, based in part on Dr. Kendrick's testimony about the test. (Tr. 516.)

Whether a case should be remanded to a different ALJ generally is a decision for the Commissioner to make. *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004). However, courts have ordered the Commissioner to reassign a case to a new ALJ on remand where the ALJ's conduct "g[a]ve[] rise to serious concerns about the fundamental fairness of the disability review process[.]" (*Id.*) In determining whether remand to a new ALJ is warranted, courts in this Circuit consider whether there is: "(1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; [or] (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party." (*Id.*) An ALJ's "[l]egal error

16

alone is insufficient to support a finding of bias." *Lebron v. Colvin*, No. 13-CV-9140, 2015 WL 1223868, at *24 (S.D.N.Y. Mar. 16, 2015).

The ALJ's reliance on Dr. Kendrick's testimony does not, without more, warrant assigning the proceeding to a new ALJ. There is no indication that ALJ Loewy would not apply appropriate legal standards on remand. Nor does the record show that ALJ Loewy harbored hostility towards the plaintiff.

Courts have directed reassignment when the original ALJ disregarded instructions from the Appeals Council, *see, e.g.*, *Patel v. Colvin*, No. 10-CV-4617, 2013 WL 3873234, at *10 (E.D.N.Y. July 25, 2013) (reassignment warranted when ALJ did not comply with Appeals Council's directive to adhere to the treating physician rule and to consider the report of a vocational consultant), when the ALJ showed animosity towards a claimant's attorney, *see, e.g.*, *Ocasio v. Barnhart*, No. 00-CV-6277, 2002 WL 485691 (E.D.N.Y. Mar. 28, 2002) (reassignment warranted when ALJ made sarcastic comments to the claimant's lawyer (e.g., "Gee that's wonderful"), cut the lawyer off during his questioning of the medical expert, accused the lawyer of failing to develop the record, and questioned the lawyer's qualifications on the record); *Sutherland*, 322 F. Supp. 2d at 293 (reassignment warranted when the original ALJ would not permit the plaintiff's attorney to ask the medical expert questions that would undermine the ALJ's opinion and made sarcastic comments about the treating physicians' reports, qualifications and the plaintiff's subjective complaints), and when a case had been remanded to the same ALJ twice before, warranting a "fresh look." *Ortiz v. Chater*, No. 95-CV-3126, 1997 WL 50217, at *3 n.1 (E.D.N.Y. Jan. 30, 1997).

This case presents no such concerns. ALJ Loewy weighed the evidence as part of her job. *Valentin v. Colvin*, No. 16-CV-245, 2017 WL 923903, at *4 (D. Conn. Mar. 8, 2017)

17

(holding ALJ was not biased because she made negative credibility determination for claimant as part of her duties). Thus, the Court leaves the decision of which ALJ should preside over the remanded proceeding to the Commissioner's discretion.

## CONCLUSION

The plaintiff's motion is granted in part. The Commissioner's motion for remand is granted in part. The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

      s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      September 1, 2021